IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TYRONE MORGAN,

    Plaintiff,                        No. 2: 09-cv-2155 WBS KJN P

    vs.

JOHN W. HAVILAND, et al.,         ORDER AND

    Defendants.             FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner, proceeding without counsel, with an action brought pursuant to Title II of the Americans with Disabilities Act ("ADA"). Pending before the court are cross-motions for summary judgment. Also pending is defendant's motion for sanctions. After carefully reviewing the record, the undersigned recommends that the cross-motions for summary judgment be denied and denies defendant's motion for sanctions.

II. Standards for Summary Judgment

        Summary judgment is appropriate when a moving party establishes that the standard set forth in Federal Rule of Civil Procedure 56(c) is met. "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

III. Undisputed Facts

Plaintiff is housed at California State Prison-Solano ("CSP-Solano"). Plaintiff suffers from mental illness for which he takes antipsychotic medication. Plaintiff is a member of the Coleman class action. See Coleman v. Scharzenegger, No. S-90-520 JFM LKK P. The Coleman class includes all inmates with serious mental disorders who are or who will be

confined within the California Department of Corrections and Rehabilitation ("CDCR"). Inmates suffering from serious mental disorders including schizophrenia and bipolar disorder who do not have the ability to function without psychiatric intervention, including psychotropic medication, are included in the class.

In 1992, the district court issued the Coleman heat plan injunction. Pursuant to this plan, a subclass of Coleman plaintiffs, i.e., "heat risk inmates" who were prescribed psychotropic medications, were granted an injunction. Pursuant to this injunction, if the temperature exceeds 90 degrees outside of the facility, a heat risk inmate "will be afforded the opportunity to return to his housing unit in order to take precautions to mitigate any potential heat related illness." (Dkt. 56-5 at 9.) "The inmate will have been afforded a ducat in the form of Attachment D so that institution employees are aware of the ability of the inmate to return to his housing facility during such an event." (Id.)

Pursuant to the injunction, "[i]f a heat risk inmate is classified as a "CAT J" inmate, or if the inmate is awaiting transfer for psychiatric evaluation for "CAT I" or "CAT J", and in the event that these inmates are outside of their housing facilities for some reason, these inmates shall be ordered to return to their housing facility" when the temperature outside exceeds 90 degrees. (Id. at 9-10.)

Under the court ordered heat plan from Coleman, each prison within the CDCR is responsible for maintaining its own heat plan. CSP-Solano's heat plan is called the Extreme Weather Plan and is subject to compliance monitoring by the court in Coleman.

Pursuant to CSP-Solano's Extreme Weather Plan, when the outside temperature reaches 90 degrees, control staff announce over the institutional PA that all inmates on heat risk medication are to return to their housing units. (Dkt. No. 56-5 at 30; Dkt. 56-3 at 2.) Housing unit staff have a list of inmates that are receiving heat risk medication and account for them in the unit. (Dkt. 56-3 at 2.) Inmates are placed in their cell if their tier is not scheduled for day room during these times. (Id.)

1    Plaintiff is a heat risk inmate, although it is not clear whether he is classified as
2 "CAT J."
3 IV. Plaintiff's Claims
4    This action is proceeding on the original complaint filed August 5, 2009. The
5 only remaining defendant is the CDCR. Plaintiff alleges that when the temperature outside
6 exceeds 90, he is locked in his cell rather than being allowed to go to the day room. Plaintiff
7 claims that his placement on what amounts to a lockdown when the outside temperature reaches
8 90 degrees violates the ADA.
9    This action is proceeding on plaintiff's request for money damages only. On
10 December 22, 2010, the court dismissed plaintiff's request for injunctive relief.
11 V. Summary Judgment Motions
12    A. Statute of Limitations
13    Defendant argues that plaintiff's claims are barred by the statute of limitations.
14 The ADA does not contain a specific statute of limitations. The undersigned assumes without
15 deciding that California's two-year personal injury statute of limitations applies. Cal. Civ. Proc.
16 Code § 335.1; Pickern v. Holiday Quality Food, Inc., 293 F.3d 1133, 1137 n.2 (9th Cir. 2002)
17 (assuming without deciding that California's personal injury statute of limitations applies to
18 ADA claims); Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1135–36 (9th Cir.
19 2001) (noting without deciding that with rare exception, district courts apply California's
20 personal injury statute of limitations to federal disability discrimination claims).
21    Prisoners serving a sentence of less than life are entitled to two years of tolling of
22 the statute of limitations. Cal.Civ.Proc.Code § 352.1. Because plaintiff is eligible for parole,
23 i.e., he is serving a sentence less than life without parole, he is eligible for the two years of
24 tolling. See Martinez v. Gomez, 137 F.3d 1124, 1126 (9th Cir. 1998) (inmate serving term of life
25 imprisonment with the possibility of parole may claim statutory tolling); (Dkt. 56-7 at 2;
26 plaintiff's deposition transcript discussing his sentence). Accordingly, plaintiff is eligible for two

years of tolling.

A federal cause of action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know of the injury that is the basis of the action. Alexopulos v. San Francisco Unified School District, 817 F.2d 551, 555 (9th Cir. 1987).

Defendant argues that plaintiff's claims are barred by the statute of limitations because he did not file this action within four years of when he first arrived at CSP-Solano in December 2002 and was first subject to the Extreme Weather Plan in the summer of 2003. (Dkt. No. 56-7 at 28; plaintiff's deposition transcript discussing when he arrived at CSP-Solano).

In his opposition to defendant's motion, plaintiff argues that pursuant to the continuing violation doctrine, his claims are not barred by the statute of limitations. The continuing violation doctrine is an equitable doctrine designed to "prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort." O'Loghlin v. County of Orange, 229 F.3d 871, 875 (9th Cir. 2000). To establish a continuing violation, a plaintiff must show "a series of related acts against a single individual . . . that . . . are related closely enough to constitute a continuing violation." Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1480-81 (9th Cir. 1989).

As articulated in the employment context, the Ninth Circuit has "recognized two methods by which a plaintiff may establish a continuing violation. First, the plaintiff may show a serial violation by pointing to a series of related acts against one individual, of which at least one falls within the relevant period of limitations. . . . Second, a plaintiff may show a systematic policy or practice of discrimination that operated, in part, within the limitations period – a systemic violation." Douglas v. California Dept. of Youth Authority, 271 F.3d 812, 822 (9th Cir. 2001) (footnote, citations and internal quotation marks omitted). "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981) (citation omitted)). "Mere continuing impact" from a past violation is not actionable under the continuing violation doctrine. Knox v.

Davis, 260 F.3d 1009, 1013 (9th Cir. 2001)

In his opposition to defendant's summary judgment motion, plaintiff argues that he was first required to go to his cell when the outside temperature exceeded 90 degrees in the summer of 2003. Plaintiff argues that he was again subject to this "policy" in the summers of 2004 through 2008. Plaintiff's deposition testimony is consistent with this representation. (Dkt. 56-7 at 27-28.)

In the reply to plaintiff's opposition, defendant argues that plaintiff's claim for application of the continuing violation doctrine is foreclosed by Knox v. Davis, 260 F.3d 1009 (9th Cir. 2001). Defendant argues that in Knox the Ninth Circuit held that a limitations period began running on the date of a parole board's initial determination, when a prisoner "had notice of all of the wrongful acts she wished to challenge at the time of the [initial determination]." Knox, 260 F.3d at 1014. Defendant argues that the Ninth Circuit rejected a continued violation theory, explaining that any continuing effects are "nothing more than the delayed, but inevitable, consequences of the [initial determination.]" Id.

As noted above, Knox stands for the proposition that "mere continuing impact" from a past violation is not actionable under the continuing violation doctrine. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). In the instant case, plaintiff is not complaining about continuing impact from a past violation. Rather, plaintiff is complaining of continual unlawful acts that occurred each summer for six years. The last alleged violation occurred in the summer of 2008. Because this action was filed within four years of the summer of 2008, plaintiff's claims are not barred by the statute of limitations. Accordingly, defendant's summary judgment motion on this ground should be denied.

B.  Coleman/Res Judicata

Defendant moves for summary judgment on two grounds previously raised in a motion to dismiss. First, defendant argues that plaintiff's action should be dismissed because his claims are under the jurisdiction of the Coleman court. Defendant argues that because plaintiff is

a member of the Coleman class action, he should raise the claims raised in the instant action in Coleman. Second, defendant argues that plaintiff's claims are barred by the doctrine of res judicata. Defendant argues that the fact that Coleman has already been resolved raises application of res judicata and warrants dismissal of plaintiff's claims.

On November 9, 2010, the undersigned recommended that defendant's motion to dismiss plaintiff's claim for injunctive relief on the grounds that he is a member of the Coleman class be granted. Citing Crawford v. Bell, 599 F.2d 890, 892-93 (9th Cir. 1979), and McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991), the undersigned found that plaintiffs who are members of a class action for equitable relief from prison conditions may not maintain separate, individual suits for equitable relief involving the same subject matters as the class action. (Dkt. No. 23 at 3-5.)

In the November 9, 2010 findings and recommendations, the undersigned recommended that defendant's motion to dismiss plaintiff's remaining claims for money damages on the grounds that the action was barred by the doctrine of res judicata be denied:

> Finally, defendant moves to dismiss this action as barred by the doctrine of res judicata. Coleman involved only equitable relief and not money damages.
>
> Moreover, the general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events. In fact, "every federal court of appeals that has considered the question has held that a class action seeking only declaratory or injunctive relief does not bar subsequent individual suits for damages." In re Jackson Lockdown/MCO Cases, 568 F.Supp. 869, 892 E.D. Mich. 1983); see e.g., Fortner v. Thomas, 983 F.2d 1024, 1030-32 (11th Cir. 1993) ("It is clear that a prisoner's claim for monetary damages or other particularized relief is not barred if the class representative sought only declaratory and injunctive relief, even if the prisoner is a member of a pending class action."); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4455 (1981 and 1995 Supp.) (collecting cases).

Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir. 1996).

(Dkt. No. 23 at 6-7.)

Defendant did not object to the November 9, 2010 findings and recommendations addressing the motion to dismiss. On December 22, 2010, the Honorable William B. Shubb adopted the November 9, 2010 findings and recommendations. (Dkt. No. 24.)

"Under the law-of-the-case doctrine, a court will not reexamine an issue previously decided by the same or higher court in the same case." Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc., 275 F.3d 762, 766 (9th Cir. 2001). The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion. Arizona v. California, 460 U.S. 605, 618 (1983). A court may have discretion to depart from the law of the case where: (1) the first decision was clearly erroneous; (2) there has been an intervening change of law; (3) the evidence is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997). A district court abuses its discretion when it applies the law-of-the-case doctrine without one of these five requisite conditions. Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993).

While defendant raises these arguments in the context of a summary judgment motion rather than a motion to dismiss, it has presented no grounds for departing from the law of the case. Accordingly, defendant's motion for summary judgment on these grounds should be denied.[1]

C. Intentional Discrimination

Both parties move for summary judgment on the merits of plaintiff's ADA claim,

---

[1] It seems that defendant's counsel may be inexplicably unaware of its previously filed motion to dismiss. In the instant motion, defendant argues that, "[t]o allow subsequent lawsuits to be filed whenever an individual class member seeks different injunctive relief would begin a never-ending cycle of litigation . . ." (Dkt. No. 56-1 at 18: 12-14.) As discussed above, defendant's motion to dismiss plaintiff's request for injunctive relief was granted.

addressing the issue of whether plaintiff has demonstrated intentional discrimination. In the motion to dismiss, defendant also argued that plaintiff had not demonstrated intentional discrimination.

Because both parties have submitted additional evidence going to the merits, the issue of intentional discrimination is not barred by the law of the case doctrine. For background purposes, the undersigned sets forth herein the discussion in the previous findings and recommendations addressing this issue:

> Defendant moves to dismiss plaintiff's claim for damages on grounds that plaintiff has not demonstrated deliberate indifference.
>
> To establish a violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).
>
> Damages are not available under Title II of the ADA absent a showing of discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference requires (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. Id. at 1139.
>
> To satisfy the first requirement for a showing of deliberate indifference, a plaintiff must identify a specific, reasonable and necessary accommodation that the public entity has failed to provide, and must have notified the public entity of the need for accommodation. Id. at 1138. In the instant case, plaintiff alleges that defendant failed to allow him to remain on the yard or go to the day room, rather than being locked in his cell, when the temperature outside exceeded ninety degrees. Plaintiff argues that these accommodations were reasonable. Plaintiff also contends that other inmates were allowed to remain in the day room or on the yard when the temperature outside exceeded ninety degrees. Plaintiff argues that by forcing him to go on lockdown at these times, defendant discriminated against him based on his disability. Based on these allegations contained in the complaint, the undersigned finds that plaintiff has adequately pled specific, reasonable and necessary accommodation that defendant failed to provide.

> Attached as an exhibit to plaintiff's complaint is a copy of a grievance filed by plaintiff alleging that he is required to go to his cell when the temperature outside reaches ninety degrees. Also attached as an exhibit is a copy of the Director's Level Decision denying this claim. These exhibits adequately establish that defendant had notice of this grievance.
>
> The second element of deliberate indifference requires a showing that the entity deliberately failed to fulfill its duty to act in response to the request for accommodation. Id. at 1139-40. Because plaintiff claims that defendant denied his request to stay on the yard or go to the day room rather than being locked down in his cell when the temperature outside exceeded ninety degrees, the undersigned finds that plaintiff has adequately pled the second element of deliberate indifference.

(Dkt. No. 23 at 5-6).

Plaintiff is claiming that defendant made him stay in his cell when the outside temperature exceeded 90 degrees rather than allowing him to go to the day room. Plaintiff claims defendant denied him a reasonable accommodation by refusing him any day room access on the days the outside temperature exceeded 90 degrees.

The cross-motions for summary judgment should be denied because whether plaintiff was required to stay in his cell the entire time the outside temperature exceeded 90 degrees is a disputed material fact. Pursuant to the CSP-Solano Extreme Weather Plan, defendant suggests that plaintiff was permitted day room access with his tier. In his opposition, plaintiff denies that he was allowed to go to the day room with his tier:

> 11. A copy of CSP-Solano heat plan is attached as Exhibit H, and it does not mention that heat risk inmates are to be ordered back to their cells, but the housing unit's day room. This is not what's being enforced.

(Dkt. No. 64 at 7, plaintiff's declaration, ¶ 11.)

Accordingly, whether plaintiff was permitted to go to the day room with his tier is a materially disputed fact.

////

The cross-motions for summary judgment should also be denied because neither party has adequately addressed the issue of reasonable accommodation. Defendant may be arguing that requiring heat risk inmates to stay in their cells at all times that the outdoor temperature exceeded 90 degrees, with no day room access, did not violate the ADA because Coleman permits this practice. However, the Coleman settlement states that heat risk inmates are to be returned to their "housing units," which include day rooms. Therefore, it is not clear that Coleman requires that heat risk inmates be returned to their cells. In any event, the fact that the CSP-Solono plan permits heat risk inmates access to the day room with their tiers suggests that some day room access would be a reasonable accommodation.

It is also unclear whether allowing heat risk inmates day room access when their tiers go to the day room, as provided by the CSP-Solano plan, is a reasonable accommodation. In an administrative grievance, plaintiff stated that there were days when the outside temperature exceeded 90 degrees that his tier did not have day room access. (Dkt. No. 64 at 63.)  Without knowing how often plaintiff's tier had day room access, and for how long, the undersigned cannot evaluate the reasonableness of this proposed accommodation.

In the reply to plaintiff's opposition, defendant *argues* that allowing heat risk inmates "unlimited" day room access, i.e., day room access without their tiers, is not a reasonable accommodation. Defendant *argues* that plaintiff cannot have access to the day room whenever he wishes because there are not enough correctional officers to monitor him in the day room. In support of this argument, defendant cites the Director's Level Decision responding to plaintiff's administrative grievance regarding the issue raised in this action. (Dkt. 64 at 68.) This response states, in relevant part,

> I. APPELLANT'S ARGUMENT: It is the appellant's position that he is taking heat sensitive medication and when the outside temperature reaches 90 degrees he is required to return to his cell. The appellant states that his building does not have a dayroom and he has to be returned to his cell. The appellant contends that this is an unfair practice because the buildings have two officers and one in the tower with guns. The appellant requests that all inmates on

> psychiatric medication be given the option of staying in the dayroom when the outside temperature exceeds 90 degrees.
> II. SECOND LEVEL'S DECISION: The reviewer found that the policy related to the activation of the Stage I Heat Alert and the inmates on Heat Medication being returned from the exercise yard to their respective cells is an appropriate custody practice. The control of inmates in manageable numbers inside of a housing unit is paramount for the safety of staff and inmates. The appeal was denied at the Second Level of Review. (SLR).
> III. DIRECTOR'S LEVEL DECISION: Appeal is denied.
> . . . After considering the evidence and arguments herein, it has been determined that staff acted appropriately on the appellant's request. There shall be no relief afforded to the appellant at the DLR.

(Dkt. 64 at 68.)

While the Director's Level Decision generally states that returning heat risk inmates to their cells is "an appropriate custody practice," it does not state that CSP-Solano is unable to provide sufficient staff to monitor the day room to accommodate the heat risk inmates at all times the outside temperature reaches 90 degrees. A declaration by a qualified prison official to this effect, rather than statements in a response to an administrative grievance, would be persuasive evidence. See Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (the ADA does not require a public entity to take any action that it can demonstrate would result in undue financial and administrative burdens). For these reasons, the undersigned finds that defendant has not demonstrated that allowing heat risk inmates access to the day room only with their tiers, versus "unlimited" day room access, is a reasonable accommodation.

In conclusion, the undersigned finds that neither party should be granted summary judgment as to the merits of plaintiff's claim because 1) the amount of day room access plaintiff had is disputed; 2) the amount of day room access that could be reasonably accommodated is not clear from the record.

D. Damages

Defendant moves for summary judgment on grounds that plaintiff has failed to establish that he suffered any damages. Defendant argues that plaintiff admits that he suffered

no injuries, physical or otherwise, as a result of the Extreme Weather Plan.

To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant. Duvall v. County of Kistap, 260 F.3d 1124, 1138 (9th Cir. 2001). There is no physical injury requirement for recovering damages in a claim brought pursuant to Title II of the ADA:

> In most instances, the injury alleged pursuant to Title II of the ADA is exclusion from participation in, or the denial of the benefits of the services, programs, or activities of a public entity, because of discrimination against a person by reason of disability. See, e.g., Easley v. Snider, 36 F.3d 297 (3d Cir. 1994) (seeking to enjoin state to include persons with certain types of mental disabilities in state home care program); Kinney v. Yerusalim, 9 F.3d 1067 (3d Cir. 1993) (seeking to enjoin municipality to install curb cuts as part of street resurfacing plan); Concerned Parents to Save Dreher Park Ctr. v. City of West Palm Beach, 846 F.Supp. 986 (S.D. Fla. 1994) (seeking to enjoin municipality from eliminating certain recreational programs for disabled persons).

Parker v. Universidad de Puerto Rico, 225 F.3d 1, 7 (1st Cir. 2000). See also Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("[O]nce a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury."); Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo., 458 F.Supp.2d 160, 167 (S.D.N.Y. 2006) ("In the context of the ADA, awareness of discriminatory conditions, and the avoidance of a public accommodation because of that awareness, is injury in fact.").

As indicated above, in order to proceed with his ADA claim, the only injury plaintiff is required to have suffered is the alleged discrimination, which he has plead. For this reason, defendant's motion for summary judgment on grounds that plaintiff has failed to demonstrate an injury should be denied.

VI. Defendant's Motion for Sanctions

On July 12, 2011, defendants filed a motion for evidentiary and monetary sanctions. For the following reasons, this motion is denied.

14

On June 14, 2011, the undersigned granted in part and denied in part defendant's motion to compel. Plaintiff was ordered to serve defendants with supplemental responses to interrogatories nos. 2-6 and 10-11. In the pending motion, defendant argues that plaintiff did not provide information responsive to interrogatories nos. 10-11 in his supplemental responses.

Interrogatory nos. 10-11 asked as follows:

> Interrogatory no. 10: During what dates and times in the summer of 2008 were you returned to your cell, and not given access to a dayroom, because the temperature reached 90 degrees or higher outdoors?
>
> Interrogatory no. 11: During what dates and times in the summer of 2009 were you returned to your cell, and not given access to a dayroom, because the temperature was 90 degrees or higher outdoors?

Plaintiff initially objected that responding to these interrogatories was burdensome because it would require him to search through files and records of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff argued that the Heat Plan Coordinator had this information.

In granting defendant's motion to compel, the undersigned found that plaintiff was arguing that the information sought in interrogatories nos. 10 and 11 was equally available to defendants. This is not a valid objection. The undersigned also rejected plaintiff's claim that obtaining the information would be overly burdensome. Accordingly, the motion to compel as to interrogatories nos. 10 and 11 was granted.

In his supplemental response to interrogatory no. 10 plaintiff stated,

> The question is compound the use of the "during" is vague. During what dates in the summer of 2008? My answer is during the dates the temperature reached 90 degrees or higher and the "control" made a general announcement to all staff and inmates over the yard public address system that the outside air temperature had reached 90 degrees and that the "Stage I" of the Extreme Weather Plan had been activated and for all inmates on heat risk medication to lock up. During what times? During second watch and third watch of prison.

(Dkt. No. 49-1 at 11.)

Plaintiff's supplemental response to interrogatory no. 11 stated,

> This interrogatory is compound and the use of "during" is vague. The dates are the first part I'll answer. During the dates the outside air temperature reached 90 degrees and the stage I of the Extreme Weather Plan went into effect. During the times? When the prison was on second and third watch.

(Id.)

In the motion for sanctions, defendant first argues that plaintiff's objections that the interrogatories are vague and compound have been waived. The undersigned agrees. In granting defendant's motion to compel, the undersigned did not order that plaintiff could make additional objections.

Defendant next moves for sanctions on grounds that plaintiff's supplemental responses do not identify the dates or times he was allegedly returned to his cell, without access to the day room, as alleged in his complaint.

In his opposition to defendant's motion, plaintiff states that the information sought in interrogatories nos. 10 and 11 is maintained in outside temperature logs which are kept pursuant to the Coleman action. Plaintiff states that he requested these temperature logs from defendant in a request for production of documents. Attached as Exhibit A to plaintiff's opposition is what appears to be a copy of plaintiff's request for production of documents in which he requested from defendant the outside temperature record log at C.S.P. Solano for the summers of 2008 and 2009. (Dkt. No. 52 at 5.) On April 26, 2011, defendant responded to these requests. In response to the requests for the logs from 2008, defendant stated,

> After a diligent search and reasonable inquiries, CDCR has been unable to locate copies of these logs. CDCR is informed and believes that the personnel responsible for maintaining these logs are no longer employed by CDCR, the location where such records are maintained has changed over time, and the records have either been misplaced, lost or inadvertently destroyed in the nearly three years since they were created. The search is ongoing and CDCR will supplemental these responses if and when the logs are located.

(Id.)

> In response to request for logs from 2009, defendant stated,
>
> > To the extent that CDCR has been able to locate responsive documents, copies are provided with these responses labeled as pages CDCR RFPD 45-80. A search for additional logs is ongoing and CDCR will supplement these responses if and when additional responsive documents are located.

(Id. at 6.)

Attached as an exhibit to defendant's response to the request for production of documents are copies of the logs that CDCR could locate for 2009. These logs are for dates in April 2009 to June 4, 2009, and October 2009. In other words, defendant did not provide plaintiff with logs from the summer of 2009.

In his declaration submitted in support of his opposition to defendant's motion, plaintiff states that all of his answers to defendant's interrogatories were based on his memory and to the best of his knowledge. (Dkt. No. 52 at 54.)

Plaintiff clearly did not know the dates on which he was returned to his cell in the summers of 2008 and 2009. Plaintiff sought this information by way of a request for production of documents, but defendant was unable to provide plaintiff with the documents containing the at-issue dates. In responding to interrogatories nos. 10 and 11, plaintiff should have informed defendants that he either did not know or remember the dates on which he was ordered to return to his cell, but that he was in the process of attempting to obtain that information. Plaintiff's supplemental responses to interrogatories nos. 10 and 11 were not responsive.

Defendant apparently supplemented its response to plaintiff's request for production of documents because in his opposition to defendant's summary judgment motion, plaintiff attaches heat logs from CSP-Solano for dates in May-September 2008.

While the undersigned agrees that plaintiff's supplemental responses to interrogatories nos. 10 and 11 were not responsive, it is clear that plaintiff could have responded to these requests had defendants timely provided plaintiff with the heat logs he sought in his

request for production of documents. Without further information regarding why defendants were unable to provide these logs when they were requested by plaintiff and when defendant finally provided them to plaintiff, the undersigned cannot determine whether sanctions are warranted. Based on the present record, the undersigned finds that both plaintiff and defendant contributed to this discovery dispute.

Accordingly, IT IS HEREBY ORDERED that defendant's motion for sanctions (Dkt. No. 49) is denied;

IT HEREBY RECOMMENDED that:

1. Plaintiff's summary judgment motion (Dkt. No. 46) be denied;

2. Defendant's summary judgment motion (Dkt. No. 56) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 8, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

mo2155.sj